IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Southway Crane & Rigging Columbia, LLC, | C/A No.: 3:09-2193-JFA |
| Plaintiff, | |
| vs. | **ORDER** |
| Local 470, International Union of Operating Engineers, | |
| Defendant. | |

This matter comes before the court on the motion of plaintiff Southway Crane & Rigging, LLC ("Southway") for summary judgment [dkt. # 18] against defendant Local 470 of the International Union of Operating Engineers ("Local 470"). Southway seeks a declaration that a series of agreements between the parties (the "Referral Agreements") apply only to the wages and benefits for crane operators referred to Southway by Local 470. In its response, Local 470 advised the court that it does not oppose Southway's motion for summary judgment nor the relief it seeks.

I.   Factual and Procedural Background

Southway is a company that owns and operates a rigging business based out of Lexington, South Carolina. Local 470 is the local chapter of the International Union of Operating Engineers (the "National"), and has its sole office located in Graniteville, South Carolina. Beginning in 2002, the parties entered into a series of Referral Agreements, each identical to the next save the specific dollar amounts relating to wages and benefits. (Compl.

¶ 11; Ans. ¶ 12.) The most recent of the Referral Agreements became effective on July 1, 2008, and expires on June 30, 2010 (the "2008 Referral Agreement"). (Mot. Summ. J. Ex. 1.) The Referral Agreements set forth the conditions of employment, including wages and benefits, of qualified crane operators referred and assigned to Southway by Local 470 ("Referred Employees"). Mechanically, the relationship between the parties consists of Southway soliciting crane operators first from Local 470, and if Local 470 cannot refer qualified operators within forty-eight hours, Southway is free to procure operators from any other source ("Nonreferred Employees"). Employees subject to the Referral Agreements are paid according to the wage provisions of the Referral Agreement then in effect and are eligible to participate in the Central Pension Fund (the "Fund") of the National. Pursuant to the Referral Agreements, Southway has been, and is, obligated to contribute to the Fund for employees subject to the Referral Agreements. Begining in 2009, the Fund demanded that Southway make payments to the Fund for the Nonreferred Employees of Southway. The applicability of the Referral Agreements to Nonreferred Employees is the subject of this action.

II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties to the action

do not dispute the relevant and material facts. Accordingly, the court must determine if Southway is entitled to judgment as a matter of law.

III. Discussion

Southway contends that the terms of the Referral Agreements, as they relate to wages and benefits, do not apply to Nonreferred Employees. As an initial proposition, Southway asserts that the terms of the Referral Agreements are ambiguous and that the intent of the parties should govern to exclude application of the wage and benefit provisions of the Referral Agreements to Nonreferred Employees. In the alternative, Southway asserts that the contract should be reformed to reflect the intent of the parties to apply the wage and benefits provisions of the Referral Agreements solely to Referred Employees.

A. The Referral Agreements

Southway asserts that the contract may be ambiguous and not reflective of the parties' mutual intent. In construing a contract, "a court must ascertain and give effect to the intention of the parties." Laser Supply & Serv's, Inc. v. Orchard Park Assoc., 676 S.E.2d 139, 143 (S.C. App. 2009). An unambiguous contract must be enforced according to its terms "regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." Jordan v. Security Group, Inc., 428 S.E.2d 705, 707 (S.C. 1993). Where a contract is ambiguous, the court must ascertain the intention of the parties.

1. Are the Referral Agreements Ambiguous?

Whether a contract is ambiguous is determined by looking at the entire contract rather

3

than its components in isolation. Farr v. Duke Power Co., 218 S.E.2d 431, 433 (S.C. 1975). Facial inconsistency, or terms that are susceptible of more than one interpretation, will render a contract ambiguous. Hawkins v. Greenwood Dev. Corp., 328 S.C. 585, 593 (S.C. 1997). The test, as enunciated by the Supreme Court of South Carolina, is whether a contract "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Id. at 593. "If the vital terms of a contract are ambiguous, then, in an effort to determine the intent of the parties, the court may consider probative, extrinsic evidence. Dixon v. Dixon, 608 S.E.2d 849, 852 (S.C. 2005).

The first section of each Referral Agreement defines the scope of the agreement and defines the parties bound. Section 1 states in full:

> The purpose and intent of this Agreement is to bring about a more thorough understanding and more harmonious relationship between the parties hereto. The Employer recognizes the Union as the exclusive bargaining agent of all employees performing work within the Local Unions craft and geographical jurisdiction as assigned by the International Union of Operating Engineers. In recognition the parties hereby agree to the following:

(Mot. Summ. J. Ex. E.) The Referral Agreements then each go on to set forth, in identical fashion, the mechanism for referring employees, the right of management to set qualifications, the hours of work, and the manner in which wages and benefits are due, among other rights and duties. (Id.) The Referral Agreements at no point define which employees are subject to them, each indicates only that Local 470 is the "exclusive

4

bargaining agent" for "all employees performing work within the Local Union['s] craft and geographical jurisdiction as assigned by the International Union of Operating Engineers."

Southway argues that the Referral Agreements are ambiguous. Specifically, Southway appears to argue that difference of opinion over the meaning of the term "assigned" afflicts the Referral Agreements with ambiguity. (Mot. Summ. J. 6, 12–13.) The court takes its argument to mean that "assigned" could apply to either the phrase "craft and geographical jurisdiction" or "all employees." If it applies to "craft and geographic jurisdiction," then the contract could be said to apply to all employees, no matter their provenance or affiliation, that perform work of a type and in a location concurrent with the jurisdiction of Local 470. If "assigned" applies to "employees," the logical implication is that an employee would first need to have affiliation with Local 470 and then be assigned by Local 470 to Southway. Accordingly, if "assigned" applies to "employees" then the Referral Agreements do not apply to Nonreferred Employees. If "assigned" applies to "craft and geographic jurisdiction," the Referral Agreements reach beyond Referred Employees.

Section 1 uses the terms "Union," "Local Union," and "International Union of Operating Engineers." If each term is synonymous, then the scope of the contract is not ambiguous and "assigned" applies to "employees." Whether the terms are synonymous must be determined taking the contract as a whole. Section 2 indicates that "bargaining unit employees" are to be referred or assigned by "the Local Union." Section 5 refers to jobs and projects covered by a collective bargaining agreement with "Local 470." Section 11 states

5

that the "Union" will not strike during the term of the Referral Agreements. Section 13 requires Southway to deduct administrative dues from the "wages of employees covered by this Agreement, who sign dues authorization forms" in an amount "designated by the Union as either regular dues and/or administrative dues." Section 18 refers to "the Business Manager of the Union." The court finds that "Union," "Local Union," and "Local 470" are synonymous in the Referral Agreements. However, the "International Union of Operating Engineers" is only mentioned once. The term appears to refer to the National, of which Local 470 is the local chapter. As the National is the entity doing the assigning in Section 1, the court is constrained to construe the contract to mean that the National assigned the craft and geographic jurisdiction to Local 470, and not that it assigned members of the Local 470 to Southway. Accordingly, the court finds that the Referral Agreements, as written, apply to all employees performing work of a kind and in a place that the Local 470 has been granted jurisdiction by the National.

B.  Southway Seeks Reformation of the Referral Agreements

As the court finds the contract applicable to some Nonreferred Employees, Southway alternatively seeks to have the contract reformed to reflect the parties' intentions. "It has long been the law of [South Carolina] that where a written contract does not conform to the intention of the parties, equity will reform the contract." Shaw v. Aetna Cas. & Sur. Ins. Co., 262 S.E.2d 903, 905 (S.C. 1980). This is so where mutual mistake results "in the omission or insertion of some material element affecting the subject-matter or the terms and

stipulations of the contract, inconsistent with those of the parole agreement which necessarily preceded it." Jumper v. Queen Mab Lumber Co., 106 S.E. 473 (S.C. 1921). However, before equity will reform a contract, "it must be shown by evidence which is most clear and convincing not simply that it was a mistake on the part of one of the parties but that it was a mutual mistake." Sims v. Tyler, 281 S.E.2d 229, 230 (S.C. 1981).

In Jumper, the Supreme Court of South Carolina found that a contract should be reformed to reflect the parties' intent where the contract provided for conveyance of title to a tract of land rather than conveyance of only the timber rights. In that instance, the parties' intent to convey solely the timber rights was clear, but the contract failed to capture their agreement. Here, the court is presented with a situation similar to that in Jumper. The Referral Agreement, as written, applies to all employees performing work of a kind and in a place that the Local 470 has been granted jurisdiction by the National; however, neither party to the Referral Agreements intended, or appears to have even contemplated, such a possibility. As evidence of Southway's intent, it offers the affidavit of Guy A. Lopez ("Lopez), the managing member of Southway, and its signatory to the Referral Agreements. Lopez affirms that "It is and has always been my understanding that the Referral Agreements do not apply to the wages and benefits (including payments or contributions made to any union benefit funds) of any Non-Referred Employees." (Lopez Aff. ¶ 17.) In response to Southway's request to admit, Local 470 indicated that the parties' mutual intent envisioned the Referral Agreements bearing only on the wages and benefits of Referred Employees.

7

(Mot. Summ. J. Ex. 1 ¶ 18.).

Considering the parties' Joint Response to Local Rule 26.03 Interrogatories, Southway's requests to admit, Local 470's answer, Guy Lopez's Affidavit, and Local 470's concession to summary judgment in the manner sought by Southway, the evidence clearly leads to but one conclusion: the parties intended that the wage and benefits provisions of the Referral Agreements—Sections 4, 6, 7, 12, 15, 16, 17, and 18—should apply solely to Referred Employees. Where the reduction of the parties' agreement to writing erroneously and inaccurately reflects the parties' intention, the mistake is in the writing, not the agreement, and the parties are entitled to reformation. See Jumper, 106 S.E. at 477–78. That is the case here, and the parties have clearly and convincingly demonstrated that the Referral Agreements, as reduced to writing, are not reflective of their agreement.

IV.  Conclusion

Based on the foregoing, the court hereby grants Southway's motion for summary judgment [dkt. # 18] pursuant to the terms of this order. The court declares that insofar as the Referral Agreements apply to wages and benefits, the Referral Agreements only govern the wages and benefits of Referred Employees.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

April 26, 2010
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge